UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff | § | |
| v. | § | CIVIL ACTION NO. 7:21-cv-308 |
| | § | |
| $139,980.00, MORE OR LESS, | § | |
| IN UNITED STATES CURRENCY | § | |
| | § | |
| Defendant. | § | |

**VERIFIED COMPLAINT FOR FORFEITURE IN REM**

Comes now Petitioner United States of America, by and through the Acting United States Attorney for the Southern District of Texas and the undersigned Assistant United States Attorney, pursuant to Rule G, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure, and respectfully states as follows:

*Nature of the Action*

1. This is a civil action to forfeit *in rem* property and condemn to the use and benefit of the United States the following property: $139,980.00, more or less, in United States currency ("Defendant Property").

*Jurisdiction and Venue*

2. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1345, 1355, 1356.

3. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1355(b)(1), 1391(b), and 1395.

4. The Defendant Property is in possession of the United States Border Patrol in the Southern District of Texas. The Defendant Property will remain within the jurisdiction of the court pending litigation of this case.

1

*Statutory Basis for Forfeiture*

**21 U.S.C. § 881(a)(6)**

5.  21 U.S.C. § 881(a)(6) mandates the forfeiture of "all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter."

6.  The Defendant Property is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because the funds constitute: (1) money furnished or intended to be furnished by a person in exchange for a controlled substance in violation of the Controlled Substances Act; (2) proceeds traceable to such an exchange; and/or (3) money used or intended to be used to facilitate a violation of the Controlled Substances Act.

*Factual Basis*

7.  Drug traffickers in the Southern District of Texas and beyond exchange controlled substances for cash in an effort to disguise the criminal origin of their proceeds and to evade law enforcement. These drug traffickers use couriers to physically deliver the drugs and to receive the cash proceeds.

8.  The Rio Grande Valley is a hotbed for this kind of criminal activity due to the proximity to the international border. Drug trafficking organizations passing through the Rio Grande Valley travel south to Mexico and north to the greater United States. When traveling north of the Rio Grande Valley, traffic bottlenecks to two main highways: U.S. Route 281 and U.S. Route 77. United States Border Patrol operates well known highway checkpoints in Falfurrias, Texas along U.S. Route 281 and in Sarita, Texas along U.S. Route 77. Here, Border Patrol Agents inspect vehicles and utilize narcotics detecting canines. When traveling north of the valley, some

couriers either attempt to secret drugs and/or currency through these checkpoints, but others are deterred and attempt to send currency by mail to avoid the checkpoints entirely.

9. On September 30, 2020, U.S. Border Patrol Agent ("BPA") Jairo Segura and his narcotics-certified service canine ("Enny") were assigned to the FedEx Terminal in Pharr, Texas. BPA Segura noticed several suspicious-looking packages on a conveyor belt and pulled them for closer inspection.

10. Enny conducted a non-intrusive, open air sniff and positively alerted to one of the suspicious packages. This was an overnight package shipped by Iyayi Osagie ("Osagie") in Edinburg, Texas to "Kelly Ike" in Atlanta, Georgia. BPA Segura detained the package for closer inspection. Inside the package was a soft-sided cooler, surrounded by plastic-air packing material, which concealed fourteen (14) envelopes. Inside the envelopes was United States currency which totaled $139,980.00. Notably, it is against FedEx's shipping policy for currency to be shipped through their services.

11. Osagie did not correctly state his sending address on the shipping label. Instead, Osagie used the address and phone number of the business used to ship the package: Quality Mail Service. After the seizure of the currency, the Drug Enforcement Agency ("DEA") obtained video footage from Quality Mail Service and confirmed Osagie dropped off the package. U.S. Border Patrol's Evidence Collection Team further inspected the envelopes and positively identified Osagie by fingerprint.

12. DEA called Osagie about the package. Osagie told DEA that Osagie shipped the package to himself. "Kelly Ike" was actually Osagie's roommate in Atlanta, Georgia at the time of seizure. According to Osagie, "Kelly Ike" was simply going to hold onto the package until Osagie returned.

13. U.S. Border Patrol sent Osagie a notice of forfeiture on November 18, 2020. On or about December 18, 2020, Osagie submitted a petition for remission of the property. The petition, along with submitted affidavits, argued that Osagie was in the business of buying luxury vehicles for Nigerian clients.

14. According to Osagie, the funds originated from a Nigerian businessman, Osakwe Julius ("Julius"), and was exchanged through multiple parties before getting to Osagie. Julius wired 54,600,000.00 Nigerian Naira to a Nigerian business named Sule Waheed Enterprises through "Access Bank". Sole Waheed Enterprises received these funds on September 9, 2020. On September 11, 2020, Sule Waheed Enterprises wired 52,500,000.00 Nigerian Naira to Kunle Oladejo Johnson ("Oladejo") who in turn gave the funds to a fourth party, Ezekwem. Ezekwem converted the funds into United States Currency and withdrew the funds as cash. Ezekwem then allegedly gave Osagie $139,980.00 in cash when Osagie was "visiting" McAllen.

15. The currency exchange rate on September 11, 2020 was .002605 Nigerian Naira for one United States Dollar. For 52,500,000.00 Nigerian Naira, Oladejo should have received $136,762.50 to hand off to Osagie. This number is inconsistent with the amount seized by Border Patrol and Osagie's petition.

16. Osagie's petition stated the funds had two purposes: $20,000.00 was a personal loan from Osakwe Julius to Osagie, and the remaining amount was for Osagie to purchase two luxury vehicles for Osakwe Julius. However, in a notarized affidavit signed January 20, 2021, Osagie omitted the alleged $20,000.00 loan and stated the entire $140,00.00 in cash was payment for vehicles.

17. The petition further stated that Osagie did not want to travel with the bulk cash. Osagie could have deposited the currency in a bank or driven through a Border Patrol checkpoint

with the cash in Falfurrias or Sarita, Texas. Instead, Osagie attempted to avoid law enforcement and mailed the bulk cash to his residence in Georgia.

18. Osagie included an affidavit from Oladejo, the person who received 52,500,000.00 Nigerian Naira from Sule Waheed Enterprises on September 11, 2020. This affidavit stated that Oladejo actually received the funds on September 9, 2020. This is inconsistent with Osagie's story and the submitted screenshot of the wire transfer. Oladejo incorrectly stated that Oladejo wired the same funds back to Nigeria in November, 2020. Oladejo could not have wired the same funds back to Nigeria as they were in the custody of the United States Border Patrol.

19. Osagie also submitted an affidavit allegedly from the Honorable Justice Obeyemi O. Oke of the Nigeria Judicial Bureau High Court of Justice Court 1 – Lagos as evidence that the funds originated from a legitimate transfer. This document, however, is fraudulent and did not originate from the High Court of Justice in Lagos, Nigeria.

## *Conclusion*

20. Given the positive detection of illegal narcotics, the way in which the $139,980.00 in U.S. Currency was secretly packaged into envelopes, placed inside a sealed cooler, inside a cardboard box; the incorrect shipping address and phone number; the fact that Osagie mailed the currency to himself; the fact that Osagie received funds inconsistent with the Nigerian Naira exchange rate; the inconsistent stories from Osagie and the submitted affidavits; the fact that Osagie traveled to the Rio Grande Valley to pickup approximately $140,000.00 in cash that he would not put in a bank; the fact that Osagie refused to drive through a border checkpoint with the currency; and the fact that Osagie produced a fraudulent document that Osagie alleged was from the Nigeria High Court of Justice Court 1 - Lagos , these facts and circumstances would lead a reasonable person to believe that the Defendant Property represents illegal proceeds from the sale of narcotics and/or property used to facilitate unlawful drug-related activity.

21. Considering in totality the above described facts and circumstances, the evidence demonstrates that the Defendant Property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) as the Defendant Property was involved in, constitutes, or is derived from proceeds traceable to the sale of narcotics and/or property used to facilitate a violation of the Controlled Substances Act. Therefore, the Defendant Property is subject to forfeiture.

### *Notice to Any Potential Claimants*

22. YOU ARE HEREBY NOTIFIED that if you assert an interest in the Defendant Property which is subject to forfeiture and want to contest the forfeiture, you must file a verified claim which fulfills the requirements set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. The verified claim must be filed no later than thirty-five (35) days from the date this Complaint has been sent in accordance with Rule G(4)(b).

23. An answer or motion under Rule 12 of the Federal Rules of Civil Procedure must be filed no later than twenty-one (21) days after filing the claim. The claim and answer must be filed with the United States District Clerk for the Southern District of Texas at United States Courthouse, 1701 W. Business Hwy 83, McAllen, TX 78501, and a copy must be served upon the undersigned Assistant United States Attorney at United States Attorney's Office, 600 E Harrison St. #201, Brownsville, TX 78520.

### *Prayer*

24. Wherefore, the United States of America prays that due process is issued to enforce the forfeiture of the Defendant Property, that due notice be given to all interested persons to appear and show cause why forfeiture of the Defendant Property should not be decreed, that the Defendant Property be condemned as forfeited to the United States to be disposed of according to law, and for such other and further relief as this Honorable Court may deem just and proper.

Respectfully submitted,

JENNIFER LOWERY
Acting United States Attorney

By: /s/ Rick Blaylock
Rick Blaylock
Assistant United States Attorney
Texas Bar No. 24103294
Federal Bar No. 3544108
600 E. Harrison St., #201
Brownsville, TX 78520
Office: (956) 566-2132
Fax: (956) 548-2711

*Verification*

I, Jairo Segura, an agent with the United States Border Patrol, hereby verify under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the facts set forth in Paragraphs 7 through 21 of the Factual Basis in the foregoing Complaint For Forfeiture In Rem are true and correct to the best of my knowledge and belief.

Executed on __8-12-__, 2021.

Jairo Segura
Border Patrol Agent
United States Border Patrol